# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JAMES KEVIN WOODS (#117961)**                              **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                                    **NO. 04-0361-C-M3**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, this _30th_ day of July, 2007.

**DOCIA L. DALBY**
**MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2007 JUL 31  P 2 0°

BY DEPUTY CLERK

JAMES KEVIN WOODS (#117961)                    CIVIL ACTION

VERSUS

N. BURL CAIN, WARDEN                           NO. 04-0361-C-M3

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner, James Kevin Woods, challenges his 1996 conviction and sixty-five-year sentence, as enhanced by a multiple offender adjudication, entered after a jury trial on one count of armed robbery, a violation of La. R.S. 14:64.  He complains (1) that the trial court erred in overruling objections to the State's alleged race-based use of peremptory challenges, based upon Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), (2) that the prosecution failed to notify the defense of a prior identification of the petitioner by one of the victims, (3) that the prosecution utilized perjured testimony at trial, (4) that the procedure utilized to identify the petitioner as the perpetrator was unduly suggestive, (5) that the petitioner was provided with ineffective assistance of counsel, and (6) that the trial court abused its discretion and deprived petitioner of a fair trial.

## PROCEDURAL HISTORY

The record reflects that the petitioner was charged with one count of armed robbery, a violation of La. R.S. 14:64.  He pleaded not guilty and, after a trial by jury, was found guilty of the charged offense.  Upon the filing of a multiple offender charge, the petitioner admitted to being a second felony offender and was sentenced to sixty-five (65) years at hard labor, without the benefit of parole, probation or the suspension of sentence.

The petitioner appealed his conviction and sentence to the First Circuit Court of Appeal for

the First Circuit, asserting (1) that the trial court erred in overruling the petitioner's <u>Batson</u> objections, (2) that the trial court erred in denying a motion for mistrial based upon the State's failure to disclose a witness' prior identification of the petitioner as the perpetrator, (3) that the trial court erred in its instruction to the jury relative to the use of a toy gun during the robbery, (4) that the evidence was insufficient to support the verdict, (5) that the sentence was excessive, and (6) that the trial court erred by allowing an amendment to the bill of information immediately prior to trial.  Pursuant to decision dated June 29, 1998, the appellate court affirmed the conviction, <u>State v. Woods</u>, 713 So.2d 1231 (La. App. 1st Cir. 1998), and on April 1, 1999, the Louisiana Supreme Court declined to exercise supervisory review. <u>State v. Woods</u>, 741 So.2d 1281 (La. 1999).

On March 21, 2000, the petitioner filed an application for post-conviction relief in the state trial court, arguing that his conviction should be overturned because (1) the state allegedly utilized perjured testimony at trial, (2) the identification procedure was unduly suggestive, (3) he was provided with ineffective assistance of counsel at trial, (4) the trial court judge abused his discretion, and (5) he was provided with ineffective assistance of counsel on appeal.  After a hearing held in December, 2001, the petitioner's application was denied.  This determination was upheld by the Louisiana Court of Appeal for the First Circuit and, on April 30, 2004, the Louisiana Supreme Court declined to grant supervisory review.  <u>See State ex rel Woods v. State</u>, 872 So.2d 486 (La. 2004), and <u>State ex rel Woods v. State</u>, 872 So.2d 489 (La. 2004).

On June 1, 2004, the petitioner filed the instant application for federal habeas corpus relief in this Court.  It appears from the record that the petitioner has exhausted state court remedies relative to his claims as mandated by 28 U.S.C. § 2254(b) and (c).

<u>FACTUAL BACKGROUND</u>

A review of the evidence reflects that at around 1:15 p.m. on the afternoon of November 4, 1994, the Guaranty Bank in Jarreau, Louisiana, was robbed by a man wearing sunglasses, gloves and bandanas around his neck and over his face, and apparently wielding a handgun.

Photographs taken of the perpetrator by the bank's surveillance cameras were indistinct and did not provide a good view of the robber.  Several days after the robbery, however, a man approached police officers in Baton Rouge, Louisiana, and informed them that he had information relative to the robbery.  Specifically, he informed them that he had been in the company of the bank robber on the evening preceding the robbery, had spent the night with him in New Roads, Louisiana, and had been with him immediately prior to the robbery itself and had observed him enter and leave the bank at the time of the offense.  He provided detailed information regarding their activities during the pertinent period of time, and he further informed the police that he was acquainted with the robber (because the robber was married to the informant's cousin) but knew him only by the name of "Kevin", with a last name which he believed to be "Hebert".  Based upon this information, Baton Rouge police officers interviewed the petitioner, contacted the Pointe Coupee Parish Sheriff's Office, and relayed the information obtained from the informant.  Shortly thereafter, Pointe Coupee Parish Sheriff's Office detectives visited Baton Rouge, met with the informant, and displayed the photographs taken by the bank monitoring system.  In addition, photographs of one Nathan Keith Hebert, who on short notice had been identified as a person who fit the description provided by the bank tellers, had the last name "Hebert", and had previously been arrested in New Roads, Louisiana, were faxed by the Pointe Coupee Parish Sheriff's Office to Baton Rouge.  When the informant viewed the referenced photographs, which were admittedly of poor quality, he initially identified Nathan Keith Hebert as the perpetrator of the crime.

The informant, Anthony Wilson, was thereafter transported to the Pointe Coupee Parish Sheriff's Office and was there provided with an identification book containing hundreds of photographs, among which were photographs of both Nathan Keith Hebert and the petitioner, James Kevin Woods.  Upon review of this book, the informant readily identified the petitioner, James Kevin Woods, as the perpetrator of the offense, whereupon a warrant was issued for the arrest of the petitioner.

At a subsequent preliminary hearing, the petitioner was also identified by one of the bank tellers as the man who had committed the charged offense.  Although the other teller could not conclusively identify the petitioner, the identifying teller, Marjorie Plauche, testified that she had repeatedly viewed the perpetrator from the front and in profile, had gotten a good look at his distinguishing features not covered by the bandanas and glasses, and could testify that the petitioner was the person who committed the offense.

Although clothing, gloves, and two bandanas matching the description provided by the tellers and the informant were found on a roadway near the bank, no money or weapon were ever recovered.

<u>STANDARD OF REVIEW</u>

Turning to a substantive review of the petitioner's claims, the standard for review in this Court is that set forth in 28 U.S.C. § 2254.  Specifically relevant is 28 U.S.C. § 2254(d)(1), which provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>See also</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination.  <u>See</u> 28 U.S.C. § 2254(d)(1)-(2); <u>Montoya v. Johnson</u>, 226 F.3d 399 (5th Cir. 2000), <u>cert. denied</u>, 532 U.S.

1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001).  Mere disagreement with the state court is not enough: The standard is one of objective reasonableness.  Montoya, supra, 226 F.3d at 404.  See also Williams v. Taylor, supra, 529 U.S. at 409, 120 S.Ct. at 1521 (2000)("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").  State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

DISCUSSION

Initially addressing the petitioner's claim that the trial court erred in overruling the petitioner's objections to the alleged race-based use of peremptory challenges by the State pursuant to Batson v. Kentucky, supra, the petitioner asserts that potential jurors Robert Bergeron, JoannToulouse, Kenneth Temple, Serana Smith McClean, Joseph Early, Shirley Epps and Mary Lenette Bazile were dismissed by the prosecution because they were African-American.  He further maintains that the "race neutral" reasons provided by the State for excusing these potential jurors were inadequate.

The United States Supreme Court held in Batson that an equal protection violation occurs when a party uses a peremptory challenge to exclude a prospective juror on the basis of race.  If the challenger makes a prima facie showing of discrimination in the exercise of the peremptory strikes, the burden shifts to the opposing party to offer racially neutral explanations for the challenged juror.  This second part of the process does not require the State to give an explanation that is plausible, or even persuasive, so long as it is not inherently discriminatory.  Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).  If a race-neutral reason is given, the trial court must then decide whether the challenger has proven purposeful discrimination.  This third and final step in the Batson analysis involves an examination of the credibility of the State's race-neutral reasons, but the ultimate burden of persuasion as to racial motivation in exercising a peremptory

challenge rests with, and never shifts from, the defendant.  Purkett, supra; Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).  Whether there has been intentional racial discrimination is a question of fact, Moody v. Quarterman, 476 F.3d 260 (5th Cir. 2007), and the trial court's evaluation of discriminatory intent is to be accorded great deference on review, and should not be reversed unless it is clearly erroneous.  Id.

The petitioner directs this Court's attention to a recent decision of the United States Supreme Court in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), wherein habeas relief was granted to a petitioner in a case involving allegations of purposeful discrimination under Batson.  In Miller-El, the Supreme Court observed that, "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step."  The Miller-El case, however, has not been determined to alter the standard of review set forth in Batson.  See Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), wherein the United States Supreme Court restated and employed the three-step Batson analysis.  See also Moody v. Quarterman, supra.

A review of the record in this case reflects that, after the exercise of five peremptory challenges, petitioner's counsel interposed an objection based upon Batson, whereupon the trial court requested that the prosecution provide reasons for the opposed challenges.[1]  After having done so, and after the resumption of voir dire, the defense raised Batson challenges to the exercise of two additional peremptory strikes by the State, whereupon the prosecution again offered its rationale for the referenced strikes.  Apart from the fact of the defense objections themselves, the record does not reflect the race of the challenged jurors nor the racial composition of the jury venire

_____

[1]     When the trial judge does not rule on the first step of the Batson analysis, i.e., on the issue whether the defendant has made out a prima facie case of discrimination in the exercise of peremptory challenges by the State, and goes directly to the second step, i.e., a consideration of the alleged race-neutral reasons given for the referenced challenges, the first step becomes moot.  United States v. Williams, 264 F.3d 561 (5th Cir. 2001).

as a whole.

The trial judge instructed the prosecuting attorney to offer race-neutral reasons for his use of peremptory challenges to excuse prospective jurors, beginning with Robert Bergeron.   In connection with this potential juror, the prosecutor gave as his reason that Mr. Bergeron had stated his belief that the prosecutor was representing him in a case -- although this information was technically inaccurate inasmuch as the prosecutor had merely corresponded with Mr. Bergeron and was in fact representing a person that Mr. Bergeron worked for.   As to the next juror, Joann Toulouse, the prosecutor noted that she had seemed nervous and had initially stated that she did not wish to "judge her fellow man", notwithstanding that she had been somewhat rehabilitated after further questioning.   As for potential juror Kenneth Temple, the prosecutor's reason for excusing this person was because he was employed at Angola, had a sister who was married to one of the prosecution's witnesses, had purportedly seen prosecutors "tear up" inmate witnesses on the stand and "make them say things they didn't want to say", and was of the opinion that no criminal defendant would want anyone like him, i.e., a person connected to law enforcement or corrections, on his jury.   With regard to potential juror Serena Smith McClean, the prosecutor noted that she had stated that some of her children had been in trouble with the law and had been incarcerated, and she had expressed concern over convicting someone.   As for potential juror Joseph Early, the prosecutor iterated that this juror had stated that he had been awake all night the previous evening and, when questioned whether he had ever been in trouble with the law, responded ambiguously, "not really".   With regard to potential juror Shirley Epps, the prosecutor noted that this person had stated that a family member had been in trouble with the law, notwithstanding that the case had been dismissed.   In addition, she had "almost had to fight back laughter" when questioned whether she would tend to believe police officer witnesses over non-police officer witnesses and was seen to be "rolling her eyes" by the trial judge.   And finally, with regard to potential juror, Mary Lenette Bazile, the prosecutor noted that she knew two of the State's witnesses, one of whom would need

to be impeached at trial.

After the provision of asserted race-neutral rationales by the State for the exclusion of the prospective jurors, the trial court judge ruled, over the objection of defense counsel, that the articulated race-neutral reasons were sufficient to justify the peremptory challenges.  This Court does not find the trial court's ruling to be clearly erroneous.  As has been often noted, the trial judge is in the best position to determine whether a race-neutral explanation is offered in good faith, or is a subterfuge for racial bias.  In the instant case, there is nothing in the record that rebuts the determination of the trial court that the States' expressed reasons for exclusion were non-pretextual and were legitimate grounds for exercise of the challenges against the prospective jurors at issue.  Although the petitioner would seek to rely upon Miller-El to contend that the rationale given by the State was pretextual, he has pointed to no side-by-side comparison, as was offered in Miller-El between challenged jurors and accepted jurors, which would tend to show discriminatory intent.  Accordingly, the trial court did not err in concluding that the petitioner failed to meet his burden of showing discriminatory intent.

The petitioner next complains that he was prejudiced by the State's failure to advise him, prior to trial, that one of the victims of the armed robbery had identified the petitioner as the perpetrator on one occasion prior to her in-court identification of him at the preliminary hearing. In this regard, the record reflects that at the preliminary hearing, Marjorie Plauche, a teller in the bank allegedly robbed by the petitioner, testified regarding her observations of the perpetrator during the robbery and testified that she was able to identify the defendant in court as the person who committed the robbery.  When questioned whether she had previously seen or identified the defendant, she responded at the preliminary hearing that she had not.  The petitioner contends, however, that this information was incorrect and that she had in fact identified him several minutes previously when she saw him with several other people as she waited for the hearing to commence. The petitioner contends that he was prejudiced when later, at trial, while being questioned

regarding her identification of the defendant as the perpetrator, the witness testified regarding this prior identification.  The petitioner contends that, upon only learning of this previous identification during trial, he was unable to effectively rebut the witness' testimony and so was prejudiced thereby.  In response, the State contends that there was no prosecutorial misconduct because even the prosecution did not know of the witness' prior identification until preparing the witness for testimony on the day prior to trial.

In the Court's view, this error, if any error there be, does not rise to the level of constitutional magnitude.  More importantly, the petitioner fails to adequately explain how he was prejudiced in fact by this lapse.  At the preliminary hearing, Marjorie Plauche identified the defendant, sitting next to counsel at the defense table, as the perpetrator of the crime.  The defense thereafter vigorously challenged her ability to identify him notwithstanding that he had been wearing two (2) bandanas over his face, gloves, and sunglasses at the time of the offense.  In the Court's view, the fact that this witness may have seen the defendant in the courtroom minutes before her testimonial identification does not amount to a prior identification of the defendant which was concealed from the defense.  Further, the Court finds it plausible, and indeed likely, that the State was unaware of this prior identification and that, when the witness testified at the preliminary hearing that she had never previously identified the defendant, she was interpreting the question with regard to the then-ongoing preliminary hearing proceedings themselves, and was truthfully attesting that she had never previously identified the defendant.  Further, the Court is unable to conclude that learning of this "prior identification" at trial resulted in any actual prejudice to the accused.  The defense at trial mounted a strong challenge to this witness' identification of the accused and to her ability to affirmatively place him at the scene of the crime.  The mere fact that she had seen him in the courtroom at the preliminary hearing, minutes before stating under oath that she could identify him as the perpetrator of the crime, does not create any greater ability to challenge the identification.  Accordingly, this assignment of error is without merit.

The petitioner next complains that the State utilized perjured testimony at trial.  In this regard, he points specifically to the testimony given by the above-referenced bank teller, Marjorie Plauche, regarding her identification of the petitioner, and also to alleged inconsistencies between statements made by the informant witness, Anthony Wilson, to investigators prior to trial and his testimony at trial, principally with regard to his identification of the petitioner as the perpetrator of the crime and with regard to the petitioner's clothing at the time of the offense.

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that, although not solicited is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence.  Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935).  See also Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  Notwithstanding, the Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury.  United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).  To find a violation of due process, the petitioner must show that (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false.  Id.  False evidence is material only if there is a reasonable likelihood that it could have affected the jury's verdict.  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  Id. (emphasis added).  Perjury is material, and a new trial is required, if "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Kirkpatrick v. whitley, 992 F.2d 491 (citing United States v. Agurs, supra).  See also Giglio, supra, 405 U.S. at 154, 92 S.Ct. at 766.

In making his claim of perjured testimony, the petitioner points specifically to the testimony of the above-mentioned bank teller, Marjorie Plauche, and to that of the alleged companion of the

petitioner prior to commission of the offense, Anthony Wilson.

Initially, with regard to Ms. Plauche, the petitioner contends, first, that this witness committed perjury because, at the preliminary hearing, she was unable to clearly identify the petitioner as the perpetrator of the crime whereas at trial, she explicitly identified the petitioner as the perpetrator. This assertion is without merit. Contrary to petitioner's assertions, the transcript of the preliminary hearing clearly reflects that Ms. Plauche positively identified the petitioner at that time as having committed the offense. Whereas the petitioner focuses on an earlier ambiguous statement by this witness at the hearing that the petitioner merely had the "same complexion" that the robber had, the petitioner overlooks subsequent testimony during which the witness clearly identifies the petitioner as the offender. Specifically:

> Q:   You say that's him right here.  Is that the person who robbed you that day?
> A:   Yes.

And further:

> Q:   ....  Are you saying that he – that he strongly resembles the person that robbed you?
> A:   Uh-hum.
> Q:   But you – you're not saying that that definitely is the person?
> A:   I think it is, sir.

Second, the petitioner contends that Ms. Plauche committed perjury, as above-related, when she stated at the preliminary hearing that she had never previously identified the petitioner. This assertion is also without merit. As explained above, the Court does not find this supposed misstatement to amount, in any appreciable sense, to false testimony. Accordingly, the testimony of this witness cannot form the basis for a claim of perjured testimony.

Turning to the testimony of Anthony Wilson, the petitioner points to several inconsistencies between the statements of this witness during the initial police investigation and his testimony at trial, notably that (1) the witness initially identified Nathan Keith Hebert, a person other than the petitioner, as the perpetrator of the offense, notwithstanding that the witness had purportedly known the petitioner for several years and had spent numerous hours with the petitioner

immediately preceding the offense, and (2) there were several other inconsistencies, including the witness' description of the petitioner's clothing at the time of the offense, when compared with surveillance photographs and the testimony of the victims of the robbery.

The Court finds this claim to be without merit.  Initially, with regard to the claim of misidentification of the petitioner, the record reflects that several days after commission of the offense, the witness Anthony Wilson contacted an employee of the Baton Rouge Police Department and advised that he had information regarding the robbery.  Upon thereafter being questioned, he provided detailed information regarding the robbery and advised that he had been with the petitioner immediately prior to the robbery and had been a witness to the events leading up thereto.  He indicated that he knew the petitioner as "Kevin" but was not sure about the petitioner's last name, believing it to perhaps be "Hebert".  He did know, however, that the petitioner lived on "Hank Drive" in Baton Rouge and drove a dark blue Topaz automobile.  Employees of the Pointe Coupee Parish Sheriff's Office showed the informant copies of the bank photographs of the robbery-in-progress and, based on information provided by the witness, faxed photographs of a man named Nathan Keith Hebert for review, who had been tentatively identified as a potential suspect because he fit the witness' description and was in their records as having previously been arrested in New Roads, Louisiana.  After the witness preliminarily identified the person in the photograph as the person who committed the robbery, he was transported to New Roads and was provided with a book containing hundreds of photographs, among which were those of both Nathan Keithe Hebert and the petitioner.  At this time, and consistently thereafter, the witness positively identified the petitioner as the perpetrator of the offense.

The petitioner points to this initial misidentification of the perpetrator -- as Nathan Keith Hebert -- as proof of perjury by the witness Anthony Wilson.  This Court cannot agree.  The evidence was undisputed that the witness was initially unsure as to the petitioner's last name and that the photographs which he initially reviewed were of poor quality.  When he thereafter reviewed

a book of color photographs, he positively identified the petitioner as the offender.  At trial, the witness testified that although he had known the petitioner for several years prior to the events of November 4, 1996, the relationship was not a close one and was based principally on the fact that the petitioner was married to the witness' cousin.  There is therefore little basis for concluding that the initial confusion regarding the petitioner's identity constitutes proof of perjury.  In contrast, there was substantial verifiable detail provided by this witness and a wealth of independently corroborated evidence which directly implicated the petitioner in the crime, including but not limited to the Hank Drive address, the Blue Topaz automobile identified as the vehicle likely utilized during the robbery, a description of the bandanas worn and the gun used during the robbery, and a description of the bank employees and their location within the bank.  In addition, information provided by witness Smith led police investigators to several locations where the petitioner was established by other witnesses to have been on the date of the offense, thereby independently corroborating the witness' assertion that he had been with the petitioner on that date.

The petitioner points to several other alleged discrepancies in the testimony of witness Anthony Wilson, with particular emphasis on the shirt which the petitioner was allegedly wearing at the time of the offense.  With regard to the shirt, however, the witness was clear, both in his statement prior to trial and during his testimony at trial, that he observed the petitioner take off the shirt he was wearing (a striped shirt with his name stitched on the front) prior to entering the bank. The only discrepancy here is with regard to some minor ambiguity and inelegant phrasing in the original statement which arguably suggests that the witness observed the petitioner put on another blue shirt instead of the t-shirt he was seen wearing in the bank photographs.  The confusing nature of the initial statement, however, leaves much room for interpretation, and one likely interpretation is that the witness initially described the striped shirt, then began to describe the replacement shirt, and then backtracked to point out that the work shirt was light blue in color.[2]  It

---

[2]        The pertinent portion of the witness' statement reads as follows:

is not at all clear that, therefore, that there is any discrepancy in the witness' testimony.

In any event, one of the principal weaknesses in the State's case was that of the identification of the petitioner as the perpetrator of the offense, and the State made no effort to hide this weakness or to otherwise avoid its import.  The above-related inconsistencies were brought out at trial, and it was for the jury to determine whether these inconsistencies rendered the testimony unreliable or rendered the identification of the petitioner insufficient to establish his guilt beyond a reasonable doubt.  The jury evaluated the demeanor and credibility of these witnesses, and apparently concluded, beyond a reasonable doubt, that the petitioner was guilty of the charged offense.  This Court cannot conclude, to any degree of reasonable likelihood, that inconsistencies between statements made by these witnesses before trial and those made during trial, if indeed such inconsistencies can be seen as amounting to false statements, would have changed the jury's determination in this regard.  Accordingly, this claim as well must fail.

The petitioner next complains that the process by which the petitioner was identified as the perpetrator of the offense was fatally defective and unduly suggestive.  In this regard, he points to the fact that, of the two bank tellers who were present at the time of the robbery, one was unable to conclusively identify him and the other did so only in court, while he was sitting next to his attorney, both at the preliminary hearing held seven (7) months after commission of the offense

_____

| Det. Watson: | What was he, you remember what he was wearing besides the blue bandanna?  I mean what kind of shirt he was wearing? |
| Wilson: | You talking about clothes-wise? |
| Det. Watson: | Yeah. |
| Wilson: | I don't know.  Okay he had on some work pants, he had on some big, some blue Dickie work pants and he had a shirt on, stripped [sic] shirt on with his name on it, but he took that shirt off. |
| Det. Watson: | Okay. |
| Wilson: | He had put another shirt on you know.  Oh! A blue shirt, that what he had on, a light blue shirt on. |
| Det. Watson: | A pullover shirt or a button up? |
| Wilson: | No, a button up shirt. |
| Det. Watson: | Button up shirt.  Long sleeve or short? |
| Wilson: | Long. |
| Det. Watson: | Light blue or dark blue? |
| Wilson: | Light blue, long sleeve shirt. |

and at trial.  Assuming, however, that the identification of petitioner by this bank teller may be open to some question, the Court finds this error, if any, to have been harmless.  See Juluke v. Cain, 134 Fed.Appx. 684 (5th Cir. 2005)("... [E]ven if the identification was unduly suggestive, its admission would amount to a trial error rather than a structural error....  Such trial errors are subject on habeas review to harmless error analysis ....").  Applying a harmless error analysis, an error warrants habeas relief only upon a showing that the particular error "had a 'substantial and injurious effect or influence in determining the jury's verdict'" Id., quoting Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

In the instant case, the identification of the petitioner as the perpetrator of the offense was based only in minimal part upon the testimony of the referenced bank teller, who admittedly only saw the petitioner for a short period of time during the robbery, while he was wearing a disguise consisting of gloves, sunglasses and two bandanas covering his face.  Rather, the petitioner was principally identified as the perpetrator by witness Anthony Wilson, who came forward to police several days after the incident, identified the petitioner as somebody he knew, and provided information that the two of them had spent approximately 18 hours together immediately preceding the robbery.  According to this witness, he and the petitioner drove to New Roads in a blue Topaz automobile on the evening prior to the offense and slept at an acquaintance's house in New Roads, Louisiana.  The next morning, he and the petitioner exchanged a battery at a Wal-Mart store, bought a tire, returned to Wal-Mart or a Dollar Store (where the petitioner bought two bandanas, two pairs of gloves and a toy gun), and drove around drinking beer prior to visiting the home of the petitioner's child shortly before the robbery.  The witness further testified that the petitioner spoke of robbing a bank in the manner in which the crime was committed, and that the two of them drove by the bank several times before the witness exited the vehicle, after unsuccessfully attempting to dissuade the petitioner from committing the offense.  The witness further testified that he observed the petitioner enter and leave the bank while wearing the disguise which he had just purchased.

In addition, this testimony was substantially corroborated by independent testimony from several witnesses who confirmed having observed the petitioner, accompanied by another person, in the New Roads area, and by a Wal-Mart receipt bearing the petitioner's name and reflecting the exchange of a battery on the morning of that date.  Accordingly, it is abundantly clear that the jury's verdict was not at all dependent upon the identification provided by the referenced bank teller and that, even if that identification may be seen to have been tainted by undue suggestiveness, there has been no showing that such error had a "substantial and injurious effect or influence in determining the jury's verdict."  Juluke v. Cain, supra.

Further, the Court finds no undue suggestiveness in the identification of the petitioner by witness Anthony Wilson.  Although there was apparently some initial confusion regarding this identification, resulting from a review of poor-quality surveillance photographs and photograph(s) faxed from New Roads to Baton Rouge, this witness thereafter clearly identified the petitioner as the perpetrator after reviewing a book containing hundreds of photographs (including photographs of both the petitioner and the person initially thought to be the perpetrator).   Accordingly, it does not appear that there was any undue suggestiveness in the identification of the petitioner by this witness.

The petitioner next complains that his trial counsel was ineffective in failing to investigate and call witnesses at trial.  In this regard, a habeas petitioner who claims ineffective assistance of counsel must affirmatively demonstrate:

(1)     That his counsel's performance was "deficient", i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2)     That the deficient performance prejudiced his defense, i.e., that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective

assistance of his counsel.  Id.  To satisfy the deficiency prong of the Strickland standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  See, e.g., Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986), cert. denied, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.  See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  Martin, supra, 796 F.2d at 817.  Great deference is given to counsel's exercise of his professional judgment. Bridge, supra, 838 F.2d at 773; Martin, supra, 796 F.2d at 816.

If the petitioner satisfies the first prong of the Strickland test, his petition nonetheless must affirmatively demonstrate prejudice from the alleged errors.  Earvin v. Lynaugh, 860 F.2d 623 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989).  To satisfy the prejudice prong of the Strickland test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2067.  Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  Martin, supra, 796 F.2d at 816.  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case, he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  Id. at 816-17.

In the instant case, the petitioner asserts that his counsel was deficient for failing to locate and call two witnesses, one of whom would allegedly have testified regarding whether the petitioner slept at his house on the evening before the robbery and the other of whom would have allegedly testified that the petitioner had given her husband a ride to work in Baton Rouge at an inspecific

time on the date that the robbery occurred.  The petitioner, however, offers nothing to substantiate these contentions.  Moreover, it is clear that neither of these witnesses would have provided direct evidence that the petitioner was not the perpetrator of the offense charged.  Rather, the testimony of these witnesses would only have addressed the petitioner's location at times other than the exact time of the robbery and would have been substantially contradicted by other evidence tending to show that the petitioner was in New Roads on the date of the offense, e.g., the New Roads Wal-Mart receipt showing the petitioner to have been at that location at around 8:40 a.m. on the date of the robbery, the testimony of the petitioner's child's grandmother to the effect that the petitioner visited her residence at around 11:00 a.m. on that date, shortly before the robbery, and the substantially corroborated testimony of Anthony Wilson, who asserted that he was with the petitioner prior to and near the time of the offense itself.  In short, while the testimony of the two un-called witnesses may have been utilized to question the veracity of the foregoing evidence and testimony, there is nothing to suggest, to a reasonable probability, that but for counsel's alleged errors, the result of the proceeding would have been different.  In other words, the petitioner has not shown that a probability that the asserted errors are "sufficient to undermine confidence in the outcome."

Further, the decision to call witnesses is generally seen as a trial strategy within the domain of trial counsel.  United States v. Harris, 408 F.3d 186 (5th Cir.), cert. denied, __ U.S. __, 126 S.Ct. 297, 163 L.Ed.2d 259 (2005); Alexander v. McCotter, 775 F.2d 595 (5th Cir. 1985).  Complaints regarding the failure to call witnesses, therefore, are disfavored in habeas petitions because allegations of potential testimony are largely speculative.  Lockhart v. McCotter, 782 F.2d 1275 (5th Cir. 1986), cert. denied, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987).  As a result, a reviewing court views such claims with great caution, especially where the only evidence of what a witness would say is from the petitioner.  In the instant case, the petitioner's assertions regarding the referenced witnesses are speculative at best and do not provide, in this Court's view, either a

clear alibi or a convincing means of attacking the credibility of other witnesses.  Accordingly, on the record before the Court, this claim, as well, must fail.

Finally, the petitioner asserts that the trial judge abused his discretion in several respects, thereby rendering the conviction fundamentally unfair.  In this regard, he complains specifically of (1) the overruling, during voir dire, of a defense objection to a potential juror for cause, (2) the denial of a motion for mistrial when a prospective juror stated during voir dire that she knew the facts of the case and believed the petitioner to be guilty, and (3) the allowance of testimony from bank teller Marjorie Plauche as to the identification of the petitioner as the perpetrator of the offense.

Initially, with regard to the petitioner's claim regarding Ms. Plauche, the Court has already addressed this issue above and concluded that this contention is without merit.

Second, with regard to the petitioner's claim regarding the alleged improper overruling of a defense objection to a prospective juror for cause, the record reflects that the petitioner's attorney objected to prospective juror Debra Talbot and requested dismissal of this juror for cause.  The trial court concluded, however, that the juror had been adequately rehabilitated during voir dire questioning and had ultimately stated that she could be fair and impartial.  Notwithstanding, the petitioner asserts that this determination was an abuse of discretion and, as a result, he was required to utilize a peremptory challenge to remove this juror.

A fair and impartial jury is mandated under the Sixth Amendment.  Irvin v. Down, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).  The exercise of challenges during voir dire of prospective jurors is the procedure by which this right is primarily secured.  United States v. Nell, 526 F.2d 1223 (5th Cir. 1976).  The determination of partiality rests largely in the discretion of the trial judge, and absent an abuse of such discretion, the trial court will not be reversed.  United States v. Salinas, 654 F.2d 319 (5th Cir. 1981), overruled on other grounds by United States v. Adamson, 700 F.2d 953 (5th Cir.), cert. denied, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116

(1983).

In the instant case, the record reflects that the petitioner utilized a peremptory strike to remove the complained-of juror from the trial panel. He does not assert that, as a result, after using all of his peremptory challenges, he was thereafter required to accept an 'unacceptable juror' who thereby rendered the resulting jury panel deficient. Accordingly, this claim is without merit. See Edwards v. Butler, 1987 WL 18154 (E.D. La. 9/30/1987) ("[Petitioner] does not point to any one or more of [the ultimately chosen jury] who were "unacceptable' for any reason whatsoever."). See also United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (holding that a defendant's use of a peremptory challenge after the trial court erroneously denies a challenge for cause does not violate an accused's constitutional rights).

Finally, the petitioner complains that, during voir dire questioning, one of the prospective jurors stated that she was friends with the two victim bank tellers, was familiar with the facts of the case and would likely vote guilty. This juror was subsequently excused. The petitioner complains, however, that this comment tainted the entire jury pool and that it was an abuse of discretion for the trial court to thereafter deny his motion for a mistrial. In the Court's view, the petitioner overstates the damaging nature of the juror's voir dire testimony. Instead of stating, as contended by petitioner, that she would likely vote guilty, she stated, rather, that she knew about the case and, because of her employment by Guaranty Bank and her friendship with the referenced bank tellers, she would have a problem being fair. The entirety of the pertinent exchange is as follows:

Q:      ... Okay. Ms. St. Romain, I guess we ought'ta talk – start talking about – you told us earlier, I think, you work for the Guaranty Bank?

A:      Yes; I do.

Q:      Do you still work for 'em?

A:      Yes; I do.

Q:      Did you work for them in November of 1994?

A:      I've been there twenty-one years.

Q:      Okay you heard about this –

A:      Yes.

Q:      – crime, I guess, huh?  What have you heard about it?  I mean – have you – will that sway you in any way or can you be fair and impartial because you work for these folks and they were robbed?

A:      I know Becky and Margie very well.

Q:      Do you think that would be a problem for you –

A:      I think it would be.

Q:      – sitting here and judging somebody?

A:      Yes.

The trial court determined, based upon this exchange, that the potential effect of this statement was minimal.  Specifically, the court stated, in ruling on the defendant's motion for a mistrial,  "I don't think that the statement is enough, it's so very minor as far as I'm concerned that would prejudice the whole Jury Venire.  I just don't.  I'm not gonna grant the Motion".  This Court finds no error in this determination.  Accordingly, this assignment of error must be rejected as well.

        For all of the above reasons, this Court concludes that the petitioner has failed to establish that the trial court's ruling was contrary to, or an unreasonable application, of controlling law, or that it resulted from an unreasonable interpretation of the facts as presented to the court.  Accordingly, the petitioner is not entitled to habeas corpus relief in connection with his claims.

<u>RECOMMENDATION</u>

        It is the recommendation of the Magistrate Judge that the petitioner's application for habeas corpus relief be denied.

        Baton Rouge, Louisiana, this _30th_ day of July, 2007.

_____

**DOCIA L. DALBY**
**MAGISTRATE JUDGE**